UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-20993-MC-SCOLA/TORRES

JOE R. WHATLEY, JR.,

    Plaintiff,

v.

WORLD FUEL
SERVICES CORPORATION,

    Defendant.
_____/

## ORDER ON MOTION TO COMPEL

This matter is before the Court on Canadian Pacific Railway Company's and Soo Line Railroad Company's (collectively, "CP") motion to compel World Fuel Services Corporation ("Defendant") to comply with a subpoena issued in the United States District Court for the District of North Dakota. [D.E. 5]. Defendant responded to CP's motion on April 24, 2020 [D.E. 8] to which CP replied on May 1, 2020.[1] [D.E. 9]. Therefore, CP's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED**.

---

[1]    Joe Whatley ("Plaintiff") filed a separate memorandum in response to CP's reply on May 15, 2020. [D.E. 10]. To the extent CP's motion is granted, Plaintiff opposes any costs that may be apportioned to him.

1

## I. BACKGROUND

On July 6, 2013, an eastbound Montreal, Maine & Atlantic Railway ("MMA") train with 72 carloads of crude oil, a buffer car, and 5 locomotive units derailed in Lac-Mégantic, Québec (the "Derailment"). The Derailment set off several massive explosions, destroyed most of downtown Lac-Mégantic, and killed 47 people. A large quantity of oil was released into the environment, necessitating an extensive cleanup effort. As a result of the Derailment and the related injuries, deaths, and property damage, lawsuits were filed against MMA in both the United States and Canada.

On August 7, 2013, MMA filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The Office of the United States Trustee then appointed Robert Keach ("Mr. Keach") to serve as trustee and act on behalf of MMA. In connection with the bankruptcy and the accumulation of funds to compensate the victims of the Derailment, Mr. Keach engaged in settlement negotiations with parties identified as potentially liable for damages arising from the Derailment. This included the Defendant who served as the shipper of the crude oil. After Mr. Keach's negotiations with Defendant failed to secure a favorable settlement, he filed a lawsuit. The parties then reached a settlement on June 8, 2015, where Defendant agreed to contribute $110 million to a settlement fund in exchange for a release of all claims arising out of the Derailment, including any third-party claims. At the same time, Defendant assigned to Mr. Keach any claims arising under the Carmack Amendment.

The Bankruptcy Court then entered an order on October 9, 2015 that confirmed Mr. Keach's liquidation plan. Shortly thereafter, Mr. Keach assigned to Plaintiff – a trustee of a wrongful death trust – Defendant's rights to bring any possible claims under the Carmack Amendment.[2] After Plaintiff acquired these rights, he filed a lawsuit in the United States District Court for the District of North Dakota and CP now seeks to compel Defendant to produce documents relevant to that litigation.

## II.   ANALYSIS

CP's motion seeks to compel Defendant to comply with a subpoena and to produce certain documents in response to CP's discovery requests. CP argues that the information requested falls within the scope of Fed. R. Civ. P. 26 because – if the documents are produced – they will show that Defendant "understood the nature of the Derailment train's cargo (crude oil) and classification of crude oil, as well as communications with MMA, and documents relating to the damages Plaintiff suffered[.]" [D.E. 5 at 6]. CP claims that these items are relevant because they will aid CP in its defenses against any claims that arise under the Carmack Amendment. CP suggests, for example, that Defendant paid $110 million in exchange for a release of all tort liability but that Defendant is now seeking – via a

---

[2] In 1906, Congress enacted the Carmack Amendment to the Interstate Commerce Act (the "ICA"). *See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010). The Carmack Amendment was enacted "to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993).

3

claim assignment – to recoup that same money. CP believes this cannot stand and that the discovery requested will help support CP's defenses that the trustee in the North Dakota action cannot recover the amount sought. CP also contends that, after it served the subpoena, Defendant failed to object to it or otherwise respond. CP therefore reasons that any objections that Defendant could have raised have now been waived and that the motion to compel should be granted.

Defendant's response is that it should not have to bear the costs of identifying and producing the documents requested in CP's 22 requests for production. Defendant claims that CP's requests are too broad and that any compliance would impose a significant financial burden on Defendant to identify and produce responsive documents over a three and a half-year period.[3] Defendant estimates that it will cost $50,000 to restore its database where responsive documents are located and that there will be significant costs for Defendant's lawyers to review these documents for responsiveness and privilege. Because the subpoena constitutes an undue burden, Defendant requests that the subpoena be quashed or that CP be ordered to bear the costs of Defendant's compliance.

Under Rule 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 also allows a subpoena to command the "production of documents, electronically stored information, or tangible things

---

[3] The relevant time period is from January 1, 2011 to July 6, 2014.

at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A); *see also* Fed. R. Civ. P. (a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises . . . may be set out in a separate subpoena.").

Although Rule 45 does not identify irrelevance or overbreadth as grounds for quashing a subpoena, courts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26. *See Am. Fed'n of State, County & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011); *see also Digital Assurance Certification, LLC v. Pendolino3*, 2017 WL 4342316 *8 (M.D. Fla. Sept. 29, 2017) (stating "[t]he scope of discovery under Rule 45 is the same as the scope of discovery under Federal Rule of Civil Procedure 26."). Federal Rule of Civil Procedure 26, in turn, provides the following:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The burden of proof in demonstrating that compliance with a subpoena presents an undue burden lies with the party opposing the subpoena, while the party seeking to enforce a subpoena bears the burden of demonstrating that the

request is relevant. *See Fadalla v. Life Auto. Products, Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). To determine whether a subpoena imposes an undue burden, courts must balance the requesting party's need for the discovery against the burden imposed upon the subpoenaed party. *Id.* Courts in this District generally consider the following six factors in making this determination:

> (1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

*Plouffe v. GEICO Gen. Ins. Co.*, 2017 WL 7796323, at *1-2 (S.D. Fla. Aug. 8, 2017) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)).

The objecting party must demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome. These objections should be "plain enough and specific enough so that the court can understand in what way the [discovery sought is] alleged to be objectionable." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (citation omitted). As one might expect, boilerplate objections are borderline frivolous. *See Steed v. EverHome Mortgage Co.*, 308 F. App'x 364, 371 (11th Cir. 2009); *see also Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 400 (S.D. Fla. 2008) ("Parties shall not make nonspecific, boilerplate objections."). A similar principle governs objections on the basis of privilege. "Generalized objections asserting 'confidentiality,' attorney-client

privilege or work product doctrine . . . do not comply with local rules." *Guzman*, 249 F.R.D. at 401; *see also* Fed. R. Civ. P. 34(b)(2)(B) ("[S]tate an objection to the request, including the reasons"); S.D. Fla. Local Rule 26.1(g)(3)(A) ("[O]bjections shall state with specificity all grounds"); S.D. Fla. Local Rule App. A §§ III(A)(5) ("[O]bjections should be specific, not generalized").

If a non-party timely serves written objections, the non-party's objection to comply with the subpoena is suspended pending a court's order. *See Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015) ("Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order.") (citing Fed. R. Civ. P. 45(d)(2)(B)(ii); *Hodnett v. Smurfit–Stone Container Enters., Inc.*, Civ. A, 2010 WL 3522497, at *1 n.3 (W.D. La. Sept. 2, 2010)). "The failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." *Am. Fed'n*, 313 F.R.D. at 43 (quotation marks and citations omitted).

Here, Defendant takes issue with CP's subpoena because it seeks documents in response to 22 requests for production. The problem with Defendant's response is that never disputes the fact that – when CP served its subpoena on March 3, 2020 – Defendant failed to object or otherwise respond as required under Rule 45.[4] And the failure to serve any objections in the time provided constitutes a waiver of any

---

4  It appears that, to date, Defendant has never responded to CP's subpoena despite CP serving it more than two months ago.

7

objections. *See Carroll v. TheStreet.com, Inc.*, 2013 WL 12383301, at *1 (S.D. Fla. Apr. 15, 2013) ("[F]ailure to serve written objections to a subpoena generally waives any objections the person subject to a subpoena may have.") (citing cases). Defendant's opposition is also unpersuasive because it claims that the document requests constitute an undue burden but then fails to put forth any specifics in support of that position. Making matters worse, Defendant claims that compliance with the subpoena will cost approximately $50,000, yet fails to provide an affidavit or declaration in support of that amount. This means that, if compliance with the subpoena is somehow onerous, Defendant has fallen far short of meeting that burden because (1) it failed to respond to the CP's subpoena, (2) it failed to present any specifics in its opposition to CP's motion, and (3) it failed to provide any evidence of its financial costs. *See Coleman v. Lennar Corp.*, 2018 WL 3672251, at *3 (S.D. Fla. June 14, 2018) ("[T]he burden of proof in demonstrating that compliance with a subpoena presents an undue burden lies with the party opposing the subpoena").[5] Accordingly, Plaintiff's motion is **GRANTED** and Defendant is compelled to produce the documents requested within thirty (30) days from the date of this Order.

---

[5] It is also unclear as to how Defendant is subjected to an undue burden when there are at least four other subpoenas directed at Defendant in related cases involving the same actors seeking substantially similar documents. If anything, Defendant's production of the documents requested in CP's subpoena will further judicial economy and reduce costs because the same documents can be used in different cases.

### *III.    CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that CP's motion to compel is **GRANTED**.  [D.E. 5].  Defendant is compelled to produce the documents requested within thirty (30) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of May, 2020.

>                    /s/ *Edwin G. Torres*
>                    EDWIN G. TORRES
>                    United States Magistrate Judge