**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-20993-MC-SCOLA/TORRES

JOE R. WHATLEY, JR.,

      Plaintiff,

v.

WORLD FUEL SERVICES CORPORATION,

      Defendant.

_____/

## ORDER ON CP'S MOTION FOR CONTEMPT AND SANCTIONS

This matter is before the Court on Canadian Pacific Railway Company's and Soo Line Railroad Company's (collectively, "CP") motion for contempt and sanctions against World Fuels Services Corporation ("Defendant") [D.E. 12]. Defendant responded to CP's motion on July 8, 2020 [D.E. 14] to which CP replied on July 15, 2020. [D.E. 16]. After obtaining leave of court, Defendant filed a sur-reply on July 22, 2020. [D.E. 22-1]. Therefore, CP's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, CP's motion is **DENIED**.[1]

---

[1] On July 1, 2020, the Honorable Robert N. Scola referred CP's motion to the undersigned Magistrate Judge for disposition. [D.E. 13].

## I.     BACKGROUND

On July 6, 2013, an eastbound Montreal, Maine & Atlantic Railway ("MMA") train with 72 carloads of crude oil, a buffer car, and 5 locomotive units derailed in Lac-Mégantic, Québec (the "Derailment").  The Derailment set off several massive explosions, destroyed most of downtown Lac-Mégantic, and killed 47 people.  A large quantity of oil was released into the environment, necessitating an extensive cleanup effort.  As a result of the Derailment and the related injuries, deaths, and property damage, lawsuits were filed against MMA in both the United States and Canada.

On August 7, 2013, MMA filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  The Office of the United States Trustee then appointed Robert Keach ("Mr. Keach") to serve as trustee and act on behalf of MMA.   In connection with the bankruptcy and the accumulation of funds to compensate the victims of the Derailment, Mr. Keach engaged in settlement negotiations with parties identified as potentially liable for damages arising from the Derailment.   This included the Defendant who served as the shipper of the crude oil.   After Mr. Keach's negotiations with Defendant failed to secure a favorable settlement, he filed a lawsuit.  The parties then reached a settlement on June 8, 2015, where Defendant agreed to contribute $110 million to a settlement fund in exchange for a release of all claims arising out of the Derailment, including

2

any third-party claims.  At the same time, Defendant assigned to Mr. Keach any claims arising under the Carmack Amendment.

The Bankruptcy Court then entered an order on October 9, 2015 that confirmed Mr. Keach's liquidation plan.  Shortly thereafter, Mr. Keach assigned to Plaintiff – a trustee of a wrongful death trust – Defendant's rights to bring any possible claims under the Carmack Amendment.[2]   After Plaintiff acquired these rights, he filed a lawsuit in the United States District Court for the District of North Dakota.

## II.   ANALYSIS

CP's motion arises out of a subpoena and a related Order entered earlier in this case.  On March 3, 2020, CP served a subpoena on Defendant.  Defendant did not object or otherwise respond to the subpoena.  CP then moved to compel.  The Court granted CP's motion to compel on May 22, 2020 and imposed a 30-day deadline on Defendant to respond to the subpoena.  [D.E. 11].  CP claims that Defendant disregarded that deadline, failed to produce anything in response, and violated the Court's Order.  Because Defendant has made no attempts to comply

---

[2]    In 1906, Congress enacted the Carmack Amendment to the Interstate Commerce Act (the "ICA").  *See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010).  The Carmack Amendment was enacted "to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading."  *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993).

3

and CP is still without the requested documents, CP seeks sanctions against Defendant including fees and costs. *See SE Prop. Holdings, LLC v. Unified Recovery Grp., LLC*, 2018 WL 1896422, at *2 (S.D. Ala. Jan. 4, 2018), *Report and Recommendation adopted*, 2018 WL 1046815 (S.D. Ala. Feb. 26, 2018) ("[W]here, as here, this Court has construed an initial motion for contempt as a motion to compel compliance with a subpoena . . . there can be little question but that the non-party is exposed to civil contempt under Rule 45(g) after failing to comply with a court order that instructs the non-party to comply with a previously-served subpoena").

### A.   *General Principles of Rule 45*

Under Fed. R. Civ. P. 45(g), a non-party's failure to comply with a subpoena exposes that non-party to possible contempt. *See* Fed. R. Civ. P. 45(g) (stating that a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."); *Matter of Certain Complaints Under Investigation by an Investigating Committee of Judicial Council of the Eleventh Circuit*, 783 F.2d 1488, 1495 (11th Cir. 1986) ("If a witness disregards the subpoena and fails to comply without filing a timely motion to quash, the witness may be found in contempt of court, with no need for any further court order").

Where a party refuses to act in accordance with a court order, the other party typically requests the court to order the offending party to show cause why it should

4

not be held in contempt and sanctioned.  *See Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990).  Courts also have the inherent power to enforce compliance with their lawful orders through civil contempt.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (noting that the power to punish for contempt is inherent in all courts); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt"); *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) ("Courts have inherent power to enforce compliance with their lawful orders through civil contempt").  Civil contempt therefore provides courts with a sanction to enforce compliance with an order of the court or to compensate a complainant for losses or damages sustained by reason of noncompliance.  *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (citations omitted); *Mercer*, 908 F.2d at 768.  This makes clear that "[c]ivil contempt sanctions are available in this matter pursuant to two authorities: the Federal Rules of Civil Procedure [that is, Rule 45(g)] and this Court's inherent authority."  *In re Application of Sergeeva*, 2015 WL 12862925, *7 (N.D. Ga. Oct. 13, 2015) (citations and footnote omitted), *aff'd sub nom. Sergeeva v. Triple Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016).

The party seeking civil contempt must show by clear and convincing evidence that the alleged contemnor violated the court's prior orders.  *U.S. v. Roberts*, 858

F.2d 698, 700 (11th Cir. 1988) (citation omitted); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (citing *Roberts*, 858 F.2d 698). The burden then shifts to the alleged contemnor to produce detailed evidence explaining why he cannot comply, which requires more than a mere assertion of inability to comply. *See Roberts*, 858 F.2d at 701. The alleged contemnor must show that he has, in good faith, made all reasonable efforts to comply with the order. *Id.*; *Chairs*, 143 F.3d at 1436. If a sufficient showing is made, the burden shifts back to the party seeking to show contempt to prove the alleged contemnor's ability to comply with the court's order. *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).

Here, CP requests sanctions against Defendant because the Court compelled Defendant to respond to CP's subpoena within 30 days from the date of a court order. That deadline passed on June 22, 2020. Defendant's response is that CP's motion lacks merit because CP knew that Defendant's production was forthcoming and that CP failed to confer prior to filing its motion. Defendant claims that, if CP had contacted Defendant beforehand, it would have discovered that Defendant was scheduled to serve its production of documents (albeit untimely) on July 2, 2020 – negating the need to engage in useless motion practice. Although Defendant concedes that it failed to comply with a court order in the time provided, Defendant states that there should be no basis for contempt sanctions when the production

was only a few days late.  *See, e.g.*, *Federal Trade Comm'n v. Roca Labs, Inc.*, 2017 WL 131574, at *2 (M.D. Fla. Jan. 13, 2017) ("In light of the production made by Peters, even if a few days late, I find no basis for contempt sanctions").  Defendant also contends that CP has suffered no prejudice with such a minor delay and that it now has all of the documents in its possession.  *See Flexiteek Americas, Inc. v. Plasteak, Inc.*, 2013 WL 12170476, at *12 (S.D. Fla. Dec. 2, 2013) ("Plaintiffs have failed to establish that they were prejudiced by any purported tardy production of either the Defendants' product samples or commercial designations, and thus sanctions are not warranted under the facts of this case.").  For these reasons, Defendant concludes that the motion should be denied because CP failed to confer prior to filing its motion, Defendant produced the documents requested, and CP suffered no prejudice as a result of a brief delay.

CP takes issue with Defendant's response because Defendant did nothing to gather and produce documents during the first 25 days after the Court's Order. Then, after a June 16, 2020 meet and confer call, CP complains that Defendant served a small production of only 54 documents on July 2, 2020 (eleven days after the Court-ordered deadline).  CP also argues that Defendant improperly redacted and withheld many documents based on privilege despite being ordered to produce the documents requested, failing to timely object to the subpoena on any grounds, and failing to produce a privilege log as required under Fed. R. Civ. P. 45(e)(2).

7

**B.**    _Whether CP Violated Local Rule 7.1_

The parties strongly disagree on whether CP violated the Court's Local Rules in failing to meet and confer prior to filing its motion for sanctions, and whether this alone is a basis to deny the motion for sanctions.  On one hand, CP claims that motions for contempt are not the type of disputes that require a meet and confer because "it should have been obvious to [Defendant] that CP would make a motion for contempt once the deadline had passed without production of the documents." [D.E. 16 at 4].  Defendant contends, on the other hand, that there is no exception included in the language of Local Rule 7.1 with respect to motions for contempt and that the failure to confer is a sufficient reason by itself to deny the relief sought.[3]

Defendant's argument is well taken because Local Rule 7.1(a)(3) requires counsel for the movant to "confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion."  Local Rule 7.1(a)(3) further requires counsel for the movant to "certify" that such conferral took place or that counsel "made

---

[3]    The parties disputed the substance of the conference call that took place on June 16, 2020.  CP presented one version of events while Defendant presented another.  Either way, CP should have explained its conferral efforts when it filed its motion as required under the Local Rules and its failure to do so casts doubt that any meaningful conferral took place.  Instead, it appears that the parties conferred on whether Defendant could postpone any production of documents until after disposition of the summary judgment motions pending before the district court in North Dakota.  If that is what took place, then the parties really did no conferral at all on the issues presented in CP's motion and the Court refuses to resolve all these disputes if the parties did not at least attempt to do so in the first place.

reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, which efforts shall be identified with specificity in the statement (including the date, time, and manner of each effort), but has been unable to do so." *Id.* "Failure to comply with the requirements of this Local Rule may be cause for the Court to . . . deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." *Id.*

Notwithstanding this rule, CP maintains that motions for contempt fall outside the scope of Local Rule 7.1(a)(3) with references to several out of circuit decisions. These cases are entirely unpersuasive, in large part, because they have no relevance to the local rules *in this district.* Local Rule 7.1(a)(3) applies to "any motion in a civil case," except for the specific motions carved out later in the rule. And motions for contempt are noticeably absent from that list of motions for which the rule does not apply. Courts in this district have also applied Local Rule 7.1(a)(3) to deny motions for contempt that fail to comply with this requirement because they waste time and judicial resources in disposing of matters that could have been narrowed, if not resolved entirely, between the parties. *See Rivera v. R.A.W. Constr., L.L.C.*, 2019 WL 2253393, at *4 (S.D. Fla. Feb. 25, 2019) ("Pursuant to Local Rule 7.1(a)(3), the Court denies Plaintiff's Motion for Contempt.").

9

The same is true in this case because if – CP had conferred as it was required to do – the parties could have agreed upon a short extension of time for Defendant to comply with the Court's Order and to resolve all these other disputes with respect to the production that CP received.  This includes, for example, disputes on the number of responsive documents, arguments on privilege, the need for a privilege log, and which documents were in response to CP's requests.  CP states that, given the June 16th conference call, any further conferral efforts would have been futile.  But, Local Rule 7.1 does not contain a futility exception.  *See Temurian v. Piccolo*, 2019 WL 2491781, at \*1 (S.D. Fla. June 14, 2019) ("Plaintiffs concede that they failed to confer prior to filing the Motion, but contend that their failure was based upon a good faith belief that it was not required because it would have been futile . . . [but] the Local Rules do not contain a 'good faith' exception").  And it is unclear how conferring on these matters would have been fruitless if it could have resolved at least some of these disputes.

In any event, CP requests that we exercise our discretion and consider the motion for sanctions on the merits.  The problem with CP's motion that it is almost impossible to discern the scope of CP's objections at this point because Defendant has produced additional documents throughout the month of July and served a privilege log – two issues that CP took issue with when it filed its motion for sanctions.  It is also unclear if these documents are even needed at this point

10

because, on August 6, 2020, the district court in North Dakota granted Plaintiff's motion for summary judgment in the underlying action with respect to the assignee claims. [D.E. 25-1]. While CP did not, of course, have an opportunity to present any argument on the relevancy of this decision (given its recent disposition), it calls into question whether this entire dispute is now moot. The Court is therefore reluctant to excuse the Local Rule violation because there are so many uncertainties on which arguments remain pending, whether the documents received are now in compliance with the subpoena requests (and if not, which ones are deficient), whether the privilege log complies with Rule 45, and whether this entire dispute is now moot. Therefore, given CP's failure to comply with Local Rule 7.1 and to explain the efforts it took to narrow or resolve some of these disputes and the recent developments in this case when juxtaposed with the underlying action, CP's motion for sanctions must be **DENIED**.

## III.   CONCLUSION

For the foregoing reasons, CP's motion for contempt and sanctions [D.E. 12] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of August, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

11